Filed 11/21/13  In re T.W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T.W., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063862 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12867) |
| v. | |
| ANTHONY W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Anthony W. appeals following the jurisdictional and dispositional hearing in the juvenile dependency case of his daughter, T.W. He contends that there is not substantial evidence to support the jurisdictional finding or the finding that it would be detrimental to T.W. to be placed with him. Anthony also contends that the court erred in requiring that his visits with T.W. be supervised. We affirm.

BACKGROUND

In 2011, Anthony separated from T.W.'s mother, Monica R., after a 27-year relationship. In December, Monica moved to San Diego with T.W.; Anthony remained in Alameda County. In October 2012, the Alameda County Superior Court awarded Monica physical custody of then seven-year-old T.W., with Monica and Anthony having joint legal custody. Anthony was allowed visitation on all three-day weekends, and on the first and third weekends of each month, if air transportation was arranged for T.W.

In January 2013, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of T.W. The petition alleged that in January, T.W. had been exposed to domestic violence between Monica and Monica's boyfriend, Johnny T., and that Monica had a history of domestic violence with both Johnny and Anthony.

T.W. was detained at Polinsky Children's Center (Polinsky). In February 2013, she was admitted to the hospital due to her violent behavior toward herself and others. Two days later, she was moved to a group home. In March, the court made a true finding on the petition and ordered T.W. removed from Monica's custody. The court found that it would be detrimental to T.W. to be placed with Anthony and ordered her placed in a

2

group home. The court ordered supervised visitation and gave the Agency discretion to lift the supervision requirement, with notice to T.W.'s counsel, and to allow overnight and weekend visits, with the concurrence of T.W.'s counsel.

## THE JURISDICTIONAL FINDING

Welfare and Institutions Code section 300, subdivision (b)[1] allows a dependency when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." In the juvenile court, the Agency had the burden of proof by a preponderance of the evidence. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; § 355, subd. (a).) Anthony now has the burden of showing that the jurisdictional finding is not supported by substantial evidence. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135.) We view the record in the light most favorable to the juvenile court's ruling. (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

Anthony requests that we reverse the portion of the jurisdictional finding relating to his history of domestic violence with Monica. He argues that any such domestic violence is long past and suggests that it is unlikely that he will engage in domestic violence in the future because he is physically disabled with multiple sclerosis, and there is no indication that he is involved in, or plans to become involved in, a romantic relationship. We reject Anthony's request.

---

[1]     Further statutory references are to the Welfare and Institutions Code.

"Dependency proceedings are civil in nature and are designed to protect the child, not to punish the parent. [Citation.] [T]he court takes jurisdiction over children (§ 300); it does not take jurisdiction over parents. Moreover, the court has jurisdiction over the children if the actions of *either* parent bring the child within one of the statutory definitions in section 300. [Citation.]" (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202, italics added.) The court cannot make jurisdictional findings on allegations against one parent and dismiss the dependency petition as to the other parent. (*Ibid.*)

Here, the petition contained one count. The court made only one true finding that encompassed all of the factual allegations in the petition, rather than separate findings on each allegation. We cannot reverse one portion of the true finding.

PLACEMENT

"When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd (a).) In the juvenile court, detriment must be proven by clear and convincing evidence. (*In re Luke M*. (2003) 107 Cal.App.4th 1412, 1426; *In re Isayah C*. (2004) 118 Cal.App.4th 684, 700; *In re John M*. (2006) 141 Cal.App.4th 1564, 1569-1570.) On appeal, we apply the substantial evidence

4

standard of review, and view the record in the light most favorable to the court's order. (*In re Luke M.*, at p. 1426.)

Anthony asserts that there was no evidence of current domestic violence on his part; that T.W. developed behavioral problems only after she stopped living with him; and that a 2009 child welfare referral stating that Anthony had hit T.W. with a belt was deemed unfounded, and T.W. had no marks or bruises at that time. In making these arguments, Anthony fails to acknowledge the severity of T.W.'s emotional and behavioral problems.[2]

T.W. told the social worker and a psychologist that Anthony had hit her with his cane. Anthony testified that he had "pretend[ed]" that he was going to hit T.W. with the cane, but denied that he had actually hit her.[3] Anthony admitted that in 2009, when T.W. was four years old, he hit her with a belt. T.W.'s adult sister testified that Anthony had disciplined T.W. by hitting her "on her butt" with his hand. Monica had also physically abused T.W.

---

[2] Anthony suggests that the court erred in basing its detriment finding on factors listed in section 361, subdivision (c)(3), which applies to removal from a custodial parent when a child "is suffering severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior toward himself or herself or others . . . ." These factors are present here and show detriment within the meaning of section 361.2, subdivision (a). Further, "we review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground." (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38.)

[3] The court found that Anthony lacked credibility and "minimize[d] . . . events." We will not second guess this credibility determination (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228).

T.W also exhibited violent behavior. After October 2012, she became increasingly aggressive. Her behavior worsened after she was detained. At Polinsky, she punched, bit and spat at staff members and pulled their hair; cursed at other children and staff members; removed her clothing while playing; destroyed property; and tried to run away. T.W. also bit her own wrists, slapped herself on the head and face, punched herself in the head and pulled her hair. A physician described T.W. as assaultive and "out of control." Polinsky staff members had to restrain T.W. at least three times a week. T.W. was prescribed psychotropic medication.

In early February 2013, T.W. was suspended from school for five days for assaulting staff members and other students. The police were summoned and when they arrived on the scene, T.W. "displayed assaultive behaviors towards" a police officer. When T.W. returned to school after the suspension, she yelled obscenities, hit staff members, ripped posters off the wall and punched a parent volunteer. T.W. said that she had been told that if she behaved well, she would be returned to Monica. She said that she did not want to return to Monica because Monica would "make a worse choice than [Anthony]," such as allowing Johnny into the home.

T.W.'s behavior continued to escalate in the group home, where she required "one-on-one" supervision. A psychological evaluation, conducted less than two weeks before the hearing, concluded that T.W. needed "a highly structured, 24-hour, seven-day-a-week treatment facility such as [her current placement]" and "six to nine months of intensive treatment." The psychologist noted that T.W. had been traumatized and had been a victim of physical abuse, which required treatment in therapy. The social worker also

6

recommended that T.W. be placed in the group home where she was currently residing, and that she remain there until her behavior stabilized. The social worker did not think that placement with Anthony would be appropriate, noting that Anthony admitted that he had been aware of previous threats by Johnny against Monica; Anthony had not shown an ability to protect T.W.; and he denied T.W.'s reports of physical abuse and domestic violence. Further, Anthony had attended just one therapy session.

Both the psychologist and the social worker were of the opinion that because of the severity of T.W.'s emotional problems, she needed to be stabilized emotionally before she could be safely placed anywhere other than the group home. This constitutes substantial evidence that it would have been detrimental to T.W. to be placed with Anthony.

## SUPERVISED VISITATION

Anthony did not object in the juvenile court to the requirement that his visits with T.W. be supervised. He has thus forfeited the right to raise the issue on appeal. However, considering Anthony's claim on the merits, we conclude that he cannot prevail on his contentions that there was no evidence that he posed a risk to T.W. and that supervision was necessary.

In making a visitation order, the juvenile court must consider the child's well-being and best interests (*In re Julie M.* (1999) 69 Cal.App.4th 41, 49-50), including "the possibility of adverse psychological consequences" to the child (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1238, 1239). "No visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) We review the visitation order for an abuse of

7

discretion.  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319; *In re Alexandria M*. (2007) 156 Cal.App.4th 1088, 1095.)

As noted above, T.W. had severe emotional and behavioral problems and required constant monitoring and treatment in a structured environment.  There is no evidence that Anthony was acquainted with the nature or severity of T.W.'s behavioral problems or that he was capable of protecting T.W. and meeting her special needs during visits.  Although Anthony claims on appeal that he visited T.W. after she was detained, he testified that he had not visited her since January 2012.  Further, the record shows that after Anthony and Monica separated, Anthony's only contact with T.W. was by telephone.  Anthony had begun a parenting class, but at the time of the jurisdiction and disposition hearing, he had attended only an orientation session.  Under these circumstances, the court did not abuse its discretion in ordering that Anthony's visits with T.W. be supervised.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

8