[No. D050407. Fourth Dist., Div. One. Oct. 16, 2007.]

In re ALEXANDRIA M. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v.
THOMAS M., Defendant and Appellant;
TAMMY M., Defendant and Respondent.

---

**COUNSEL**

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips and Katharine R. Bird, Deputy County Counsel, for Plaintiff and Respondent.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Respondent.

William Hook, under appointment by the Court of Appeal, for Minors.

## OPINION

**NARES, Acting P. J.**—Thomas M. appeals orders in which the juvenile court terminated jurisdiction over the dependency of his three children, Alexandria M., Jordan M. and Brook M.; set a custody schedule between him and the children's mother, Tammy M.; and ordered child support suspended permanently. He contends the court exceeded its authority by rejecting the parents' settlement agreement regarding custody and visitation because there was no evidence that continued dependency supervision was necessary; the custody schedule promoted confusion and instability; the court erred in suspending child support payments; and it showed bias against him. We hold the court abused its discretion by not accepting the settlement agreement and by terminating child support. We make no determination regarding the quality of the custody schedule and Thomas's contentions of bias. We affirm the order terminating juvenile dependency jurisdiction, reverse the orders regarding custody, visitation and child support, and remand the matter to the family court to determine these issues.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2005, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of eight-year-old Alexandria, six-year-old Jordan, and five-year-old Brook under Welfare and Institutions Code section 300, subdivisions (b) and (j),[1] alleging the children were at risk because Tammy's boyfriend physically abused Jordan, Brook had suspicious marks on her leg and Tammy had failed to protect them. The court ordered the children detained with Thomas and ordered liberal supervised visitation for Tammy.

The children said there was domestic violence between Tammy and her boyfriend, Tony B., and Tony hit Jordan, but Tammy did nothing about it.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Tammy minimized the domestic violence and said she and Tony were no longer together.

Tammy and Thomas had a history of domestic violence during their marriage. They had divorced about two years earlier. After the children were placed with Thomas, they told the social worker they enjoyed living with him, but missed Tammy.[2] The social worker recommended Tammy complete reunification services while the children remain with Thomas. The parents argued over visitation, and the children began therapy.

On July 29, 2005, the court found true the allegations relating to Jordan's physical abuse, dismissed the allegations regarding Brook, declared the children dependents of the juvenile court, ordered them placed with Thomas and ordered the parents to comply with their case plans.

In October 2005 Tammy requested a special hearing, alleging Thomas was being uncooperative regarding visits and was not allowing her to talk to the children. She also disputed claims she was inappropriate during visits. On October 25 she petitioned under section 388, requesting the children be returned or she have unsupervised extended visits. In a report dated November 22 the social worker recommended Tammy have a weekly unsupervised visit and unsupervised telephone visits. The visitation supervisor said she had noted no problems during Tammy's recent visits, but that the parents' inability to communicate was having a negative impact on the children. At the six-month review hearing on February 1, 2006, the court continued the dependencies, continued placement with Thomas and ordered six more months of services.

On March 15, 2006, the court modified Tammy's visitation, ordering she have reasonable unsupervised telephone contact, and referred the parents to the family court mediation program. After meeting with the parents, the family court mediator recommended custody remain with Thomas and Tammy have unsupervised visits. Tammy withdrew her section 388 petition.

For the 12-month hearing, the social worker recommended the children remain with Thomas, Tammy have unsupervised visits, the court terminate jurisdiction and the family court make custody determinations. The children were strongly bonded to both parents and did not want to have to choose between them, but the parents could not communicate without arguing. The psychologist who evaluated Tammy opined she was guarded and defensive during the testing, had little insight about why she selected abusive partners

---

[2] Tammy lives in Brawley, Thomas in Alpine.

and tended to minimize the abuse. Her therapist opined she had surpassed her service requirements and was ready for reunification.

On September 19, 2006, Tammy filed a new section 388 petition, requesting the children be returned to her and the matter transferred to family court. The social worker reported Alexandria said she wanted to live with Thomas during the week and visit Tammy on weekends, and Jordan and Brook said they wanted to live with Tammy.

On September 26, 2006, the parties informed the court they had reached a settlement, and all parties were in agreement. The Agency's counsel stated the agreement included that Thomas would have physical custody, the parents would share legal custody, Tammy would have unsupervised visits and dependency jurisdiction would be terminated. Counsel specified Tammy would begin with six hours of unsupervised visits per week and unsupervised visitation would increase after four weeks of successful visitation. Counsel for the children noted the case should have been settled appropriately and in the best interests of the children. However, the court declined to accept the proposal and determined the matter needed to be litigated. The court stated: "So I'm—and let me tell you where I think we may be headed, and I want this part litigated and that is placement with the two younger children with the mother, placement with the other child with the father, and continued supervision for six months."

At the hearing that then ensued, which included five days of testimony, the therapist for Brook and Jordan testified neither child was afraid to live with Thomas, but each one missed Tammy. The therapist said the children's fear and anxiety had decreased during the course of therapy. Alexandria's therapist testified Alexandria described domestic violence between Tammy and Tony. She said Alexandria felt responsible for her siblings and it would be detrimental to separate her from them. Thomas's therapist said Thomas denied ever hitting Tammy, but the therapist knew of the allegations that there had been domestic violence between them in 2002. She opined Thomas did not pose a risk to the children. Tammy's therapist testified Tammy was not in denial about domestic violence, but was upset the children were placed with Thomas when both of them had problems with this issue. He said Tammy's attitude and behavior had changed with treatment. The social worker who supervised visits said Tammy was loving with the children and had good communication with them. She saw nothing to indicate that Thomas had interfered with visits.

The parties stipulated that were Alexandria to testify, she would state she felt safe with Thomas and wanted to stay with him. She wanted to see Tammy, but said Tammy favored the younger children.

The social worker testified he understood the children were doing well in Thomas's home. He opined Tammy was ready for unsupervised contact. He recommended the children remain with Thomas and have increased unsupervised visitation with Tammy and that dependency jurisdiction be terminated.

Tammy testified she had completed her services plan and had no contact with Tony. She had learned from therapy, had a home for the children and believed it was in their best interests to be returned to her. Thomas admitted being controlling in some instances during his marriage to Tammy, but said he had never hit her. He believed the children should have increased visitation with Tammy, but should remain with him. It was stipulated that were Thomas's current wife to testify, she would say Thomas was not controlling or violent with her.[3]

During the hearing, the court on its own motion determined to eliminate child support. Both parents agreed that under the circumstances, the order was reasonable.

On January 19, 2007, the court ordered joint custody to the parents with no primary custody or residence. The children were to live with Thomas for the current school year and with Tammy for the 2007–2008 school year. The court specified a visitation schedule for weekends, holidays and summers. The court ordered the parents to attend counseling. It then terminated dependency jurisdiction.

## DISCUSSION

Thomas contends the court exceeded its authority by rejecting the parents' settlement agreement because there was no evidence that continued depen-

---

[3] During the course of the several days of the hearing, in a report dated October 20, 2006, the social worker reported that after Tammy began having unsupervised visits, the parents had numerous disagreements about the visits. They were referred to communications therapy, but the counselor refused to continue to see them because Tammy said the counselor favored Thomas. In a report dated December 29 the social worker indicated the parents continued to argue and make allegations against each other.

dency supervision was necessary; the custody schedule the court ordered promotes confusion and instability; the court erred in suspending child support payments; and it showed bias against him. Tammy argues the court did not err in not accepting the settlement agreement, the orders were proper and Thomas has not shown bias. The Agency and the children's counsel support Thomas's arguments.

## I.  *The Settlement Agreement*

Thomas asserts the court abused its discretion by not accepting the settlement agreement regarding custody and visitation. He argues instead of conducting long, unnecessary litigation, it should have accepted the agreement and transferred the matter to the family court. His contention has merit.

## A.  *Rule*

The purpose of dependency law is "to provide for the protection and safety of . . . each minor under the jurisdiction of the juvenile court . . . ." (§ 202, subd. (a).) " 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 52 [1 Cal.Rptr.3d 432, 71 P.3d 787], quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) If a child is declared a dependent, but is not removed from the parent's physical custody, the court must schedule a review hearing under section 364 within six months of the date of the declaration of dependency and every six months thereafter. (§ 364; Cal. Rules of Court, rule 5.710(a)(2); *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450 [45 Cal.Rptr.3d 445].) At the time of such review hearing, the court must terminate dependency jurisdiction unless the social services agency establishes that conditions still exist that justify the court taking jurisdiction of the child. (§ 364; *In re Janee W., supra*, 140 Cal.App.4th at p. 1450.)

A court must consider the totality of the child's circumstances when making decisions regarding the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075].) Orders regarding visitation may be reversed only upon a clear showing of an abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465 [114 Cal.Rptr.2d 320].) " ' ["]The appropriate test for abuse of discretion is whether the trial court

exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706], quoting *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].)

■ The family court, rather than the juvenile court, is the proper forum for adjudicating child custody disputes. (*In re John W.* (1996) 41 Cal.App.4th 961, 975 [48 Cal.Rptr.2d 899].) The family court provides a means to decide domestic and family controversies and has available to it counselors and evaluators with the education and training needed to assist the court in settling family controversies. (Fam. Code, §§ 1801, 1814–1816, 3110–3116.) When custody and/or visitation are contested, the family court may refer the contested issues for mediation. (Fam. Code, § 3170.) "The juvenile courts must not become a battleground by which family law war is waged by other means." (*In re John W., supra,* 41 Cal.App.4th at p. 975.) "If indeed there is ever a place for it, the place for a custody battle is in the family law courts. There the battle will not consume public resources which are better directed to children who typically do not have the luxury of two functional parents fighting for custody . . . ." (*Id.* at p. 976, fn. omitted.)

■ In determining whether to accept a settlement agreement, the court may consider the following factors: " '(1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms.' " (*In re Jason E.* (1997) 53 Cal.App.4th 1540, 1546 [62 Cal.Rptr.2d 416], quoting *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 [30 Cal.Rptr.2d 265, 872 P.2d 1190].)

B. *Analysis*

Here, the juvenile court abused its discretion by not accepting the settlement agreement, terminating jurisdiction and referring the matter to the family court. The court did not consider the agreement the parties proposed, nor did it ask Tammy and Thomas about their understanding of its terms, but instead arbitrarily rejected the settlement and subjected the parties to five days over several months of needless, protracted litigation. This was an abuse of discretion.

At the time the court rejected the settlement, there was no showing of continued risk to the children. The court did not state it had found a risk in the custody of either parent, but indicated it would not accept the agreement because Tammy and Thomas had had many chances to negotiate a settlement and had not done so. When the Agency's counsel stated it appeared all parties were in agreement and the recommendation was for termination of jurisdiction, joint legal custody, physical custody with Thomas, and increasing unsupervised visits for Tammy, the court stated: "No. If you were going to be trying [un]supervised visits, it should have been done way before now. So I'm—and let me tell you where I think we may be headed, and I want this part litigated . . . ."

The court indicated it did not think it was advisable to terminate jurisdiction when Tammy had only had a few unsupervised telephone calls and no unsupervised visits. The court further stated: "I have a lot of questions about how we ended up where we are, and there may be more protective issues that I'm not aware of because social workers' reports are written in this format that I try to find out where the nuts, you know, are that you're trying to pull up and work with, but I wasn't finding a whole lot there."

The court's determination to hold a hearing, rather than to terminate jurisdiction demonstrates an abuse of discretion. Termination of dependency jurisdiction was required unless the Agency established that conditions remained that would justify the court taking jurisdiction of the children. (§ 364.) The Agency had made no such showing. Indeed, the court indicated the purpose of the hearing would be for it to uncover for itself whether there might be protective issues of which it was not then aware and which had not been shown by the Agency. Tammy's arguments—the agreement greatly favored Thomas because it gave him primary physical custody and her only limited visitation; the court had concerns about whether the issue of Thomas being a perpetrator of domestic violence had ever been addressed; Tammy had not yet begun unsupervised visitation and had had only a small amount of unsupervised telephone contact; and the children were divided about where they wanted to live—are insufficient reasons to require continued dependency jurisdiction and prolonged litigation.

■ Because there was no showing that custody with either parent posed a continued risk to the children warranting juvenile court supervision, the court abused its discretion by not accepting the settlement agreement, terminating dependency jurisdiction and referring the matter to the family court, which is better equipped to deal with issues of custody and visitation.

## II. *Child Support*

Thomas contends the court also erred in terminating child support payments. We agree and hold it lacked jurisdiction to do so.

### A. *Rule*

■ The juvenile court is a superior court of special jurisdiction arising from the juvenile court law. Dependency proceedings are governed by the Welfare and Institutions Code, rather than the Civil Code or the Family Code. (*In re Chantal S., supra*, 13 Cal.4th at pp. 200, 205–206.) Statutes that are not a part of the Welfare and Institutions Code do not apply to juvenile court proceedings unless they are expressly applicable. Family Code sections that address child support have not been expressly applied to juvenile dependency matters. The Welfare and Institutions Code does not give a juvenile court authority to make orders concerning child support issues. "In the absence of such specific statutory authorization, a juvenile court is vested with authority to make only those determinations which are 'incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law.' " (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1623 [267 Cal.Rptr. 746].)

### B. *Analysis*

Here, the court ordered child support terminated. It stated: "And while we're on the subject, I really think we ought to eliminate child support for either parent; that whoever has them, pay for whatever they're doing." However, the Welfare and Institutions Code does not give authority to a juvenile dependency court to make orders concerning child support. Thus, the court lacked jurisdiction to make the order and erred by ordering child support terminated. The proper forum for such a decision is the family court.

### DISPOSITION

The order terminating dependency jurisdiction is affirmed. The orders concerning custody, visitation and child support are reversed. The matter is remanded to the family court for a hearing on the issues of custody, visitation and child support. The family court may consider the parents' settlement agreement regarding custody and visitation in fashioning its orders regarding these matters in the best interests of the children. Until new custody,

visitation and child support orders are issued by the family court, the current orders are to remain in place to prevent further disruption of the children's lives.

McDonald, J., and McIntyre, J., concurred.