Filed 11/17/20  In re Anthony P. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANTHONY P., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VALERIE P., <br><br> Defendant and Appellant. | F081070 <br><br> (Super. Ct. No. JJV071928A) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Robin L. Wolfe, Judge.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Deanne H. Peterson, County Counsel, John A. Rozum and Carol Helding, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Poochigian, J. and Franson, J.

Valerie P. (mother) appeals from a sua sponte order of the juvenile court suspending overnight visits with her child, Anthony P. Mother contends the order violated her constitutional due process rights. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2018, police officers went to the home of maternal grandmother to locate mother's minor brother, a juvenile sought on a warrant as a runaway. The officers were aware that maternal grandmother also had four active misdemeanor warrants. When they arrived at the trailer, the officers saw a "2-3 year[]" old boy peeking out of a window, but no one answered repeated knocking. Fearing the child (later identified as Anthony P.) was unattended, the officers entered the trailer. They later found the missing juvenile. Maternal grandmother and mother were hiding in the back bedroom of the trailer.

The trailer was not heated and there was no electricity, but electrical wires were exposed. The trailer was filthy, with dirty diapers, bugs, dog feces everywhere, including near the child's bottles. Methamphetamine and marijuana pipes, as well as liquor bottles, were strewn on the floor. Maternal grandmother and mother were arrested for child endangerment, and mother was also charged with suspicion of being under the influence. Mother reported she and the child had been homeless but had been staying with maternal grandmother for the past few weeks.

The child, two-year-old Anthony P., was found to be "grimy," with dirty clothing, face and hands. He was barefoot and the bottom of his feet were black with dirt. He also had bruises on his shins. Anthony P. was placed in a resource family home.

When interviewed at the jail, mother denied ever using methamphetamine, instead claiming her fast heart rate was due to being scared. She admitted using marijuana three weeks prior, and admitted maternal grandmother was a drug user.

Mother had been a dependent of the juvenile court herself when she turned 18 earlier that year. She was terminated from the non-minor dependent program in August

2.

of 2018 for failure to comply with Assembly Bill No. 12 (Assembly Bill 12) program requirements and had been homeless since then.

Mother reported that Ruben S. was the father of the child but had had no contact with the child. Ruben S. denied paternity.

*Detention*

The Tulare County Health and Human Services Agency (agency) filed a Welfare and Institutions Code section 300 petition, subdivision (b)[1], alleging Anthony P. was at risk of harm due to mother being unable or unwilling to provide him a safe and sanitary home, as well as her substance abuse issue. Under subdivision (g), the petition alleged mother was incarcerated and unable to arrange proper care for Anthony P.

At the detention hearing November 16, 2018, it was noted that a criminal protective order had been issued in connection with the criminal case filed against mother based on the same incident that led to the dependency case. The order prohibited mother from having contact with Anthony P. for three years, subject to modification by the juvenile court. The juvenile court granted the agency's request to modify the order to allow for supervised visits. A jurisdiction/disposition hearing was set for January 14, 2019.

*Jurisdiction/Disposition*

The CASA report filed in anticipation of the jurisdiction/disposition hearing indicated that Anthony P. had been placed with a maternal cousin and mother had supervised visits with him in the cousin's home. Anthony P. was found to be behind in several areas, including communication and personal social skills, and was referred for various services.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

The agency's report noted an earlier referral in August of 2018, when mother left the Rescue Mission with Anthony P. and was seen forcefully grabbing him by the arm and hair. The investigation closed as inconclusive as mother and Anthony P. could not be located.

The report stated that mother was currently in a relationship. She denied a need for substance abuse treatment but welcomed parenting help. The caregiver noted mother's lack of confidence in disciplining Anthony P., which she would not do when other adults were present. The caregiver was willing to allow mother additional visits in her home to give mother more time to learn and utilize appropriate parenting skills. The agency utilized its discretion to increase visitation to eight hours per week. The results of a blood test taken on the day of Anthony P.'s removal indicated mother was not under the influence of any substances.

On January 14, 2019, all counsel submitted on the petition and report. The juvenile court found the b-1 allegation of general neglect true, and the b-2 allegation of substance abuse not true. The subdivision g-1 allegation was dismissed. The juvenile court adopted the recommendations of the agency and removed Anthony P. from mother's custody and granted mother reunification services. The six-month review hearing was set for June 17, 2019.

On May 17, 2019, the agency filed the paternity test result indicating Ruben S. was Anthony P.'s biological father.

Six-Month Review

The report filed for the six-month review recommended Anthony P. be placed with mother in the resource home where mother was residing and requested discretion from the juvenile court to return Anthony P. to mother's custody when it was deemed appropriate. Mother was residing with a former resource mother and had applied to re-enter the Assembly Bill 12 non-minor dependent program. Mother and Anthony P. had resided in this home prior to mother turning 18. Mother had contacted the previous

resource mother on her own in May 2019; before that, mother was homeless and declined to tell the agency where she had been staying.

Following a team decision meeting, it was decided that, if mother was accepted back into the program and the juvenile court approved, Anthony P. would be placed with the resource mother, the same home where mother would be. While placement would be with the resource parent, not mother, it was understood that mother would be parenting Anthony P. day to day. On June 10, 2019, mother was accepted back into the Assembly Bill 12 program and placed in the resource home.

Mother was participating in services. She completed the initial parenting class, but further parenting classes were recommended. She participated in therapy sporadically. While she was deemed not to be in need of drug treatment, she participated in random drug testing. The social worker found mother was doing better at taking advice from authority.

Anthony P. was found to be eligible for regional center services, but mother had not followed through with appointments and his case had lapsed. He was receiving weekly services through Bright Start, with mother participating as well. He was found eligible for mental health services, due to his tantrum behaviors and past traumatic experiences. Due to his various issues, Anthony P. had had four previous placements prior to being placed with the resource mother.

Mother attended all visits, but had trouble de-escalating Anthony P.'s severe tantrums. This was one of the issues she was working on in the Bright Start program.

The agency requested discretion to allow mother overnight visits and, if mother's progress continued, to place Anthony P. in mother's custody. If mother left the program, visitation would remain supervised three times a week for two hours.

While mother did not appear at the June 17, 2019, hearing, the juvenile court followed the recommendations of the agency. The 12-month review hearing was set for December 9, 2019.

5.

*12-Month Review*

The report prepared for the 12-month review recommended an additional six months of services and discretion to return Anthony P. to mother's custody when appropriate to do so.  The report stated that Anthony P. had been placed in the resource mother's placement with mother on June 18, 2019, the day after the six-month review hearing.  However, 10 days later, mother left the placement because she did not think the resource mother was letting mother parent as she thought best.  The resource mother described mother as having a negative attitude and would become upset when reminded to change a diaper or feed Anthony P.  Mother was not following the house rules, spent most of her day in her room, slept late, failed to help with chores, and failed to notify the resource mother when she was leaving or when she would return.

Mother was incarcerated from July 31 through September 3, 2019, after she was arrested on a warrant related to her previous criminal charges of child endangerment.  She did not visit Anthony P. or contact the agency during her incarceration.  She only contacted the agency once she was released.  She did not provide an address and said it would not be healthy for Anthony P. to visit.

On September 20, 2019, the social worker helped mother schedule an appointment and provided transportation to enroll in a transitional housing program, but mother did not complete the application.  She did not ask about visiting Anthony P.

In October 2019, mother reported that she had not completed an intake assessment or begun parenting classes and had been staying with different friends and family members when allowed.  The social worker encouraged mother to take advantage of her Assembly Bill 12 benefits and begin parenting classes and sign up for housing.  At the end of October, mother called and said she had obtained housing through the transitional housing program and wanted to start visits with Anthony P.  The first visit was on Halloween.

On November 12, 2019, the agency was notified that mother had experienced a domestic violence incident and had two black eyes. The housing program moved mother into another apartment due to the incident. Mother explained that the incident had occurred when her "ex-boyfriend" hit her while in the car, would not let her leave, and made her stay with him for a few days. Anthony P. was not with her when it happened.

Mother continued with her services. She met regularly with her counselor, participated in therapy, worked on obtaining her G.E.D., but realized she did not have a strong support system. Anthony P.'s final assessment for regional services was delayed because mother held educational rights but did not make herself available. He was still in the Bright Start program and had begun a Head Start program. He was diagnosed with "Adjustment Disorder with Mixed Disturbance of Emotions and Conduct" and had weekly therapy and rehab services. He was reportedly having fewer tantrums and meltdowns.

After mother had four unsupervised visits for four weeks in November, the agency exercised its discretion and arranged for overnight visits to begin November 30, 2019.

Mother did not appear at the 12-month review hearing December 9, 2019. The juvenile court indicated that it was surprised that mother was not present. It also indicated that it was not inclined to grant the agency discretion to return Anthony P. to mother, noting mother's history to do "very well at times and then she does not." The juvenile court noted it was familiar with mother's setbacks and it was concerned that her absence might be a setback as well. The juvenile court also noted its concern if mother was still with the boyfriend who caused the domestic violence incident, which could put Anthony P. in danger.

The juvenile court determined that it would not change visitation but would not grant the agency the discretion to return Anthony P. to mother. The juvenile court wanted the matter brought back to court before Anthony P. was returned. The juvenile court noted it was not concerned with mother's care of Anthony P., but rather mother

7.

placing herself in a situation that could harm Anthony P. The findings and orders granted the agency discretion to allow overnight visits. The 18-month review hearing was set for May 11, 2020.

*Section 388 Petition*

On January 24, 2020, the agency filed a section 388 petition seeking an order to return Anthony P. to mother's custody under Family Maintenance. The petition stated that mother had stable housing, had been compliant with counseling and parenting education, had been participating in overnight visits with Anthony P., and was enrolled in coursework to complete her G.E.D. The petition also noted that Anthony P. had been in seven placements, the current placement had given a 14-day notice, and the agency did not wish to place Anthony P. in another foster home. The matter was set for hearing on February 24, 2020.

In late January, the agency received a referral that mother had been involved in a domestic violence incident with her boyfriend. After several attempts to contact mother, she was reached two weeks later. Mother reported allegations of emotional abuse, but that, while Anthony P. was in the home at the time, he did not directly witness it. But mother did disclose that she was still in communication and contact with this boyfriend. Mother's home was also observed to have minimal food and diapers for Anthony P.

Mother met with a social worker on February 18, 2020, and stated she understood the harm it could cause a child who was present during arguments she might have with others. The agency informed mother that it would no longer recommend returning Anthony P. to mother at that time. Mother asked that visits not be reduced.

At the February 24, 2020 hearing, mother was present with counsel. The agency indicated that it was withdrawing its section 388 petition requesting Anthony P. be returned to mother and was no longer asking that the juvenile court change its prior order. The juvenile court indicated it was concerned about the overnight visits and asked the

agency if it was withdrawing its request for those as well. The agency indicated that it would need an order to do that but was not asking for that at this time.

The juvenile court again stated that it was familiar with what it called mother's "backpedal[ing]," and was concerned with Anthony P.'s safety on overnight visits. The juvenile court noted that mother was required to attend child abuse classes for her criminal case but was not aware if mother had begun those. The juvenile court was also very concerned with mother's domestic violence incidents in November and January, but it was unclear if it involved the same boyfriend. The juvenile court expressed further concern over the lack of food and diapers for Anthony P.

Counsel for mother stated the latest incident involved a different boyfriend and consisted only of arguing, not physical abuse. Counsel asked that the existing order be kept, as there was no motion pending to change it. After the juvenile court stated that it could make the order on its own motion, mother's counsel asked that the overnight visits be maintained to facilitate return prior to the 18-month review set for May of 2020.

Following argument, the juvenile court ruled that mother would continue to have unsupervised visits on the condition that no boyfriends were present during visits. It also ordered that no overnight visits be allowed until mother showed that she was in compliance with child abuse classes. The juvenile court also ordered a domestic violence victim awareness class to mother's plan. Following completion of the domestic violence class and enrollment in the child abuse class, the social worker could then exercise discretion to reinstate overnight visits, provided Anthony P.'s counsel concurred.

## DISCUSSION

Mother contends the trial court violated her due process rights by sua sponte modifying a visitation order without giving her notice or an opportunity to be heard. We disagree.

Section 245.5 provides, in relevant part: "In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent … of a minor who is

subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of … the minor.  These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor .…"

A juvenile court has inherent authority under the California Constitution to reconsider its prior orders when necessary to prevent a miscarriage of justice, provided that in so doing, the court does not violate the constitutional rights of the parties. (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 116–118 [modification of disposition order that denied reunification services and set a section 366.26 hearing met the standards required for the court's exercise of its inherent constitutional authority where the court weighed the children's best interests after providing the affected parent with notice and an opportunity to be heard, to present evidence, and to confront witnesses].)  "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper," subject to certain procedural requirements.  (§ 385.)  A juvenile court can exercise its power to change, modify, or set aside a prior order under section 385 sua sponte without the necessity of a section 388 petition being filed.  (*Nickolas F., supra,* 144 Cal.App.4th at pp. 112–116 [rejecting argument that court may not modify prior order pursuant to section 385 unless party has filed a section 388 petition].)

However, section 386 provides, "No order changing, modifying, or setting aside a previous order of the juvenile court shall be made in chambers, or otherwise, unless prior notice of the application therefor has been given by the judge or the clerk of the court to the social worker and to the child's counsel of record ...."  While section 386 only requires notice to a parent when the child is unrepresented, due process requires that a parent whose parental rights have not been terminated, and who may be affected by a modification order, be provided with notice and an opportunity to be heard.  (*Nickolas F., supra,* 144 Cal.App.4th at p. 111, fn. 16.)

Here, the order modifying the previous order was not made ex parte but was made in open court with all parties present. Further, mother was represented by counsel and had been served a copy of the agency report detailing the events that led to the agency decision to withdraw the request to return Anthony P. to mother. At the hearing, the juvenile court expressed concern and its intention to modify the order. It then gave all parties an opportunity to argue the issue and engaged the parties in a discussion regarding an appropriate order.

As such, mother had notice of the proposed order of the juvenile court and was given an opportunity to be heard before the order was made. Mother's counsel had the opportunity to request a continuance or a contested hearing on the visitation issue but did not do so.

We find mother's reliance on *In re C.P.* (1985) 165 Cal.App.3d 270 (*C.P.*) misplaced. In *C.P.*, the father, who resided out of state, was appointed counsel two days before the jurisdiction hearing. Counsel at the hearing requested a continuance, stating he was unfamiliar with the case, had been unable to contact the father, and had no authority to act on father's behalf. The juvenile court denied the request and the court of appeal found the error was not harmless. (*Id.* at pp. 271, 274.)

Here, the juvenile court already had jurisdiction; mother was present and familiar with the facts of the agency's report and the juvenile court's concern; and mother's counsel was present, had been representing mother for more than a year, and was familiar with mother and the case. In addition, mother's counsel did not ask for a continuance or request a contested hearing on the issue. In sum, mother's case bears no procedural resemblance to *C.P.* and her due process rights were not violated.

We also find no abuse of discretion on the part of the juvenile court in making the visitation order. Once a juvenile court has removed custody from a parent, the court has both a duty and broad discretion to issue orders to protect the child and to act in the child's best interests. (§ 361.) Visitation is to be as frequently as possible, consistent

with the well-being of the child, and no visitation order shall jeopardize the safety of the child. (§ 362.1.) "The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)

We review a visitation order for abuse of discretion and will not reverse absent a "clear showing of an abuse of discretion." (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095.)

Here, the juvenile court was aware that mother had experienced two domestic violence incidents in less than a three-month period, the second of which occurred when Anthony P. was on an overnight visit with mother. Mother reported that she was still in communication and contact with the boyfriend involved in that second incident. Mother admitted she had yet to sign up for the child abuse classes she was required to attend as part of her criminal case. The juvenile court expressed concern for Anthony P. due to mother's poor judgment and propensity to get herself into unsafe situations.

On these facts, we find no abuse of discretion on the part of the juvenile court in discontinuing Anthony P. overnight visits with mother until she had completed a domestic violence awareness class and enrolled in the child abuse class ordered in her criminal case. In doing so, the juvenile court was properly acting in *parens patriae* by looking to the totality of Anthony P.'s circumstances. (*In re Chantal S., supra,* 13 Cal.4th at p. 201.)

## DISPOSITION

The order of the juvenile court is affirmed.