Filed 6/16/22  In re K.R. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re K.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN MATEO COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  J.R.,  Defendant and Appellant. | A162914  (San Mateo County Super. Ct. Nos. 20JD0068, 20JD0069, 20JD0070) |

J.R. (father) appeals an order denying him visitation with his son, S.R., upon the juvenile court's termination of dependency jurisdiction over J.R.'s minor children, K.R., N.R., and S.R. Father contends that the juvenile court abused its discretion under Welfare and Institutions Code[1] section 362.4 by denying visitation.  We affirm.

### BACKGROUND

Mother and father have three children, K.R., N.R., and S.R.

_____

[1] All further undesignated statutory references are to the Welfare and Institutions Code unless otherwise stated.

On January 17, 2020, the San Mateo County Human Services Agency (the Agency) received a referral alleging father had sexually abused K.R. for years. About one year prior, K.R. disclosed the abuse to mother. Mother reported that she confronted father, he admitted to sexually abusing K.R., and he promised that he would stop. Mother continued to allow father access to all three children.

On January 22, 2020, father was arrested. During the arrest, father stabbed a police officer, resulting in father being shot. Father was incarcerated on a no bail bond and charged with unlawful sexual intercourse, lewd act upon a child, and attempted murder during his arrest. On January 27, 2020, a three-year criminal protective order issued prohibiting father from all personal, electronic, telephonic, or written contact with mother and the children.

On January 29, 2020, the Agency filed petitions alleging the children were at risk of serious physical harm under section 300, subdivisions (b)(1) (failure to protect), (c) (serious emotional damage), (d) (sexual abuse) and (j) (sibling abuse), with all allegations stemming from the sexual abuse of K.R. and mother's failure to protect. At the time, S.R. was nine years old. At the detention hearing, the court found the Agency established a prima facie case. Mother, the minors' counsel, and the Agency objected to visitation with father. The court denied visitation and contact between father and the minors, finding contact would be detrimental. The children were placed with mother.

2

In the Agency's combined jurisdiction/disposition report, the Agency reported that S.R. believed father broke the law and that he could not see him because of violence. S.R. was not made aware of the sexual abuse allegations. S.R. was afraid of father's temper, and he said father smashed K.R.'s phone when he was mad. S.R. wanted to see father because he missed him. Mother reported that she was afraid of father and believed he would kill her and K.R.

At the uncontested jurisdiction/disposition hearing held on March 3, 2020, the minors' attorney told the court that S.R. did not want to visit with father because it would be stressful. S.R.'s counsel informed the court that S.R. was in therapy at school. The court denied father's request for visitation given the protective order, the fact that the children were in counseling, and the additional fact that the children had stated a desire not to visit. The court noted that it might address visits again after S.R. had some time in counseling.

The contested jurisdiction/disposition hearing was continued due to COVID-19, and it subsequently took place on many days over a period of months.

The Agency's August 2020 addendum report revealed that S.R. said he wanted to see father and he missed father in April 2020. S.R. also said he told his attorney that he wanted to visit father, but S.R. said mother did not want that. He also said father would get mad easily. Father acted like a normal person to him, but father would argue with mother and was mean towards K.R. Father drank alcohol and told S.R. not to tell.

3

When asked if father ever hit him or hurt him, S.R. said, "not much," and that it "sort of used to stop." Father hit him on his back with an open hand, and father would slap and yell. S.R. shared he was feeling a lot of emotions, and father "was his best friend before." In July 2020, S.R. had many negative things to say about father and did not want to visit. Mother shared that S.R.'s new therapist advised not to share why father was incarcerated because it would burden S.R. to hear father hurt his sister. Mother said S.R. was very angry at father, and S.R. "is learning how to handle his emotions as opposed to before when the father did not allow [S.R.] to show any negative emotions." S.R.'s school counselor reported that S.R. talked about father's physical abuse and neglect; she acknowledged that S.R. missed his father, but said since he "does not seem to understand the full extent of the situation[,] it likely limits his ability to understand and process what is happening with the father."

In a second addendum report in December 2020, S.R.'s therapist shared that her focus with S.R. was on "trauma," and S.R. disclosed "incidents of physical abuse by the father, that the father drank a lot, and was mean." S.R. was "upset" father never thanked S.R. when S.R. helped father when he overdosed at home. S.R. worried about his mother. The Agency believed contact with father would be detrimental. S.R.'s CASA social worker stated that, while S.R. really missed his father, he also said father was "horrible," and he expressed a lot of anger toward father. S.R.'s CASA social worker opined that seeing father was not in S.R.'s best interest and that S.R. needed time to heal.

4

At the contested jurisdiction/disposition hearings in December 2020, the court admitted a forensic interview report regarding K.R.'s sexual abuse and the Agency's reports. The social worker assigned to investigate the sexual abuse allegations testified that she did not doubt K.R.'s credibility. Social worker Tomiko Hara, who was assigned to the case, also testified. S.R. did not disclose any physical violence towards him by father during their initial interview, and he told her he wanted to see father. In July 2020, however, S.R. no longer wanted to visit with father and had a more negative attitude toward him. Hara did not know exactly what changed S.R.'s opinion, and she had concerns that mother unintentionally influenced S.R. But her professional opinion was also that therapy may have led S.R. to be more vocal with her or they had built a rapport that made S.R. more comfortable speaking to her. S.R. said he did not want to visit father for the second time in August 2020. Hara stated that S.R. had mixed feelings about father. Furthermore, S.R. did not know all the allegations against father, and Hara believed that if he knew the severity of the allegations regarding K.R., he would not want to visit. She noted that S.R.'s therapist was working with other family therapists to develop a plan to disclose to S.R. the allegations with respect to K.R. Based on the severity of the allegations against father as to K.R., Hara believed S.R. would be at substantial risk if he were to have continued contact with father.

In a January 2021 addendum report, S.R. told the social worker he did not want to visit father. He called father a "piece

5

of garbage," and said he stopped wanting to see father a long time ago. The social worker made sure that S.R. knew whom to tell if he wanted to see father. The court admitted into evidence this addendum report at the continued hearing in January 2021, and K.R. testified about father's sexual abuse.

In March 2021, the Agency stated in another addendum report that S.R. told the social worker he was mad at father; he said his father was "trash," and father never thanked him for saving his life after he found father on the bathroom floor due to overdosing. S.R. was also mad at father for always playing video games and for drinking and forgetting what had happened the next day. S.R. did not want to see father, he hoped father would stay in jail for a long time, and he worried father would stab mother if he got out of jail. S.R. was still largely unaware of the full extent of father's abuse of K.R. and struggled to understand the family's overall situation. Father continued to be incarcerated while awaiting trial on the sexual abuse charges, and the Agency recommended no visitation.

At continued hearings in March and April 2021, mother testified that father admitted to sexually abusing K.R. for years. Mother did not initially report the abuse because father threatened suicide and K.R. asked her not to report. After mother went to the police, she filed for a domestic violence restraining order to protect her and the children, which the family court issued in January 2020. Mother conceded that she told S.R. she would prefer that he not see father, and she told her children that she feared what father would do to her. Father

6

yelled a lot, and he was verbally violent towards mother during their marriage.

After considering the evidence and hearing argument, the court sustained the petitions. Father requested that the court keep the case open and offer him reunification services and visitation. The court found the conditions that justified the initial assumption of jurisdiction no longer existed and terminated jurisdiction. Citing the evidence regarding the children's desire not to see their father, their expressed fear of their father, and their early reports of father's drinking and other behavior, the court further found that it would be detrimental to the children to offer father services, and the children would be at risk for emotional abuse if services were ordered. The court rejected father's argument that mother was the only reason the children did not want to see him. The court took judicial notice of the criminal protective order, as well as the domestic violence restraining order. For the same reasons, the court denied visitation for father, finding the children would be at risk for emotional abuse, they had been traumatized, and it was not in their best interests and well-being to have contact with father. Mother was granted full legal and physical custody of the children.

## DISCUSSION

On appeal, J.R. argues that the juvenile court abused its discretion under section 362.4 by denying him visitation with S.R. following the termination of jurisdiction. " 'When the juvenile court terminates its jurisdiction over a dependent child,

section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203.)  In making these orders, the best interests of the child, in the context of the peculiar facts of the case, are paramount.  (*In re Chantal S.*, at p. 201; *In re John W.* (1996) 41 Cal.App.4th 961, 973.)

The juvenile court has broad discretion in fashioning a visitation order, and we review such an order for abuse of discretion.  (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095.)  We may not disturb the order unless it exceeds the limits of legal discretion and was arbitrary, capricious, or patently absurd.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

On the facts of this case, the juvenile court did not abuse its discretion.  Court-ordered visitation or contact with S.R. would have run afoul of the criminal protective order prohibiting J.R. from directly and indirectly contacting S.R.  Beyond that, the record amply supported the trial court's determination that father had severely abused K.R. and had traumatized S.R.  S.R. was in counseling, had strong anger towards father, feared father would harm mother if he were released from jail, and, after the earlier phases of the dependency, expressed a desire not to see father.  Furthermore, S.R.'s therapist and the Agency were concerned about how S.R. would handle the disclosure of the allegations of father's sexual abuse of K.R., and the Agency and CASA social worker recommended no visitation.  The court could

8

reasonably conclude based on the evidence before it that visitation was not in S.R.'s best interest.

## DISPOSITION

The order is affirmed.

BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
NADLER, J.[*]

*In re K.R. et al.* (A162914)

---

[*] Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.