Filed 1/7/16  In re Candice E. CA2/1

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re CANDICE E., a Person Coming Under the Juvenile Court Law. | B265130 (Los Angeles County Super. Ct. No. DK06846) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GORDON E., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marilyn Kading Martinez, Juvenile Court Referee.  Reversed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Gordon E. (Father) appeals from the juvenile court's order terminating his visitation with his daughter Candice E. (Daughter), age 14.  Father argues the juvenile court terminated his visitation without showing by specific facts how continued visitation would be detrimental to Daughter.[1]  We reverse.

## BACKGROUND

Father and Mother (collectively Parents) began battling over custody of Daughter about a decade ago during their divorce.  In 2008, a family court entered a custody order giving Parents joint legal custody and Father primary physical custody over Daughter.  Over the years, Parents leveled serious accusations against each other about poor parenting and bad behavior.  Related to Parents' accusations, DCFS previously received several reports about Daughter's welfare.  After an investigation into the most recent report, DCFS filed a Welfare and Institutions Code section 300 petition regarding Daughter on August 13, 2014.[2]  In the petition, DCFS alleged Father had inflicted serious physical harm on Daughter under subdivision (a), failed to protect her under subdivision (b), and caused her serious emotional damage under subdivision (c).

At the August 13, 2014 detention hearing, the court removed custody from Father, placed Daughter with Mother, and ordered DCFS-monitored visits for Father.  Daughter resisted visiting Father, however.  Hoping to facilitate visitation, the court agreed at a later hearing after learning Daughter had begun therapy to expand Father's visitation to include visits in a therapeutic setting.  However, Daughter had remained steadfast in refusing to visit Father.

At the end of the jurisdictional and dispositional hearting, the court initially orally ordered monitored therapeutic visits for Father, per DCFS's original recommendation.  When Mother's counsel inquired as to the visits' frequency, the court asked what was the current frequency.  In response, Father's counsel reported Daughter had refused to

---

[1] In a letter to the court, the Department of Children and Family Services (DCFS) stated it did not file a brief because it recommended limited visitation for Father at the jurisdiction and disposition hearing.  Melanie W. (Mother) is not a party to the appeal.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

participate in any visitation, including in a monitored therapeutic setting. After hearing this, the court then ordered visitation "approximately once a month," but immediately hesitated, saying, "I need to contemplate that for a moment." The court eventually concluded, "I think I could, actually, make a finding and order of no visits today and let the family law judge address that because it would appear that a judge could make that decision on whether or not [Father] has made any progress in addressing his issues." While DCFS remained silent, Father's counsel objected, arguing, "I think to cut off all visitation at this point would, in essence, be eliminating a relationship completely between [Daughter] and her father." The court replied, "Because of the abuse [Father] perpetrated upon his daughter, he only has to look in the mirror . . . to understand why his contact with his daughter shall be restricted. It's his own conduct." The court then ruled, finding by a "preponderance of the evidence," that "contact between [Daughter] and her father would be detrimental," and terminated jurisdiction. The court added that Father could petition the family law court to change the custody arrangement if his behavior improved. Father appealed the visitation order.

## DISCUSSION

On appeal, Father argues the court erred in terminating his visitation with Daughter. We agree and reverse.

Father argues we should review the dispositional order terminating his visitation for an abuse of discretion. A line of cases supports his contention. (See, e.g., *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356; *In re J.N.* (2006) 138 Cal.App.4th 450, 459; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284; *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095–1096; *In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) A different line of cases, however, applies the substantial evidence test. (See, e.g., *In re C.C.* (2009) 172 Cal.App.4th 1481, 1492; *In re Mark L.* (2001) 94 Cal.App.4th 573, 577; *In re Dylan T.* (1998) 65 Cal.App.4th 765, 775; *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1238.) Some courts have applied a blended standard. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 837–838 [no abuse of discretion where substantial evidence supported order].) At least

3

one court has acknowledged the discrepancy.  (*In re Brittany C.*, *supra*, 191 Cal.App.4th at p. 1356.)  Another has questioned "whether the two standards are so different in this context."  (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1092, fn. 7 [applying abuse of discretion after trial court made detriment finding].)  Under either standard, however, we find the order was improper.

""""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"  [Citation.]'"  (*In re Alexandria M.*, *supra*, 156 Cal.App.4th at pp. 1095–1096, quoting *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)  Substantial evidence, on the other hand, is a review of the sufficiency of the evidence.  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.)  Under the substantial evidence test, the court gives the prevailing party the benefit of every reasonable inference and resolves all conflicts in its favor, including disregarding conflicting evidence.  (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100; *In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

At the time of the jurisdictional and dispositional hearing, DCFS presented ample evidence Father had physically and emotionally abused Daughter.  Due to this abuse, Daughter had categorically refused visitation, stating, "'Just looking at him just reminds me of everything he's done to me.'"  Notwithstanding Father's bad behavior and Daughter's resistance to visiting with him, there was insufficient evidence limited monitored therapeutic visitation would be detrimental to Daughter because a single experimental instance of such a visit never occurred.  Without even one test visit, it would be nearly impossible to tell if such a therapeutic visit would indeed be detrimental.  (*In re C.C.*, *supra*, 172 Cal.App.4th at p. 1486 [court ordered "one 'experimental' monitored visit in a neutral setting" to determine if parental visitation could be beneficial].)  We are not concluding visitation would be certainly beneficial to Daughter; in fact, it may well result in no benefit to her.  However, absent extraordinary circumstances, such a determination ordinarily cannot be made until at least a visit

occurs. Here, it was insufficient for the court to merely generally refer to past abuse to sustain sua sponte terminating jurisdiction without an explanation as to why the past abuse would result in present detriment. (*In re D.B.*, *supra*, 217 Cal.App.4th at p. 1093 [determining visits were detrimental when *after visits* children acted out, lost control of their bowels, behaved aggressively]; *In re C.C.*, at p. 1486 [analyzing detriment only *after*, "[b]y all accounts, the experimental monitored visit was a disaster"].)

We must ensure proper evidence supports such a drastic termination order because parents have a constitutionally protected "interest" "in the care, custody, and control of their children" (*Troxel v. Granville* (2000) 530 U.S. 57, 65 [120 S.Ct. 2054]), which includes visitation, "even if actual physical custody is not the outcome," as it is here (*In re Luke L.* (1996) 44 Cal.App.4th 670, 679). While a parent's fundamental interest "is not to be maintained at the child's expense" (*In re S.H.* (2003) 111 Cal.App.4th 310, 317), the "discretion to determine whether any visitation occurs at all 'must remain with the court . . . and certainly not with the child[]," and the court may not use a child's aversion to visiting an abusive parent as "'the *sole* factor'" in "administering visitation." (*Id.* at pp. 317–319.) "[B]y effectively giving" a child "the power to veto all visits," a court allows "the child's wishes [to] be the *sole* factor in determining whether visitation takes place." (*Id.* at 319.) Here, the court erred by effectively giving Daughter the power to veto visits with Father by validating through its termination order her categorical refusal to see him; by doing so, the court impermissibly used Daughter's resistance to visiting with Father as the "*sole* factor" when determining visitation. While "the child's input and refusal and the possible adverse consequences if a visit is forced against the child's will are factors to be considered in administering visitation," especially where, like Daughter, the child is older, articulate, and unequivocal, the child's resistance still cannot be the only factor in terminating visitation, as it was here. (*In re S.H.*, at p. 317; *In re C.C.*, *supra*, 172 Cal.App.4th at p. 1486 [the child's "age, intelligence and consistency" may determine the weight given to the child's input].)

In addition to constitutional concerns, courts are hesitant to alter existing custody arrangements. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 38, 43.) This is because

5

a "best interest" determination has already been made, and therefore absent "'some significant change in circumstances,'" should not be disturbed. (*Ibid.*) Here, against the plan presented by DCFS and the existing family court-ordered custody arrangement, the court sua sponte terminated all visitation without explicating what circumstances suggested how such restricted *visitation* would be detrimental to Daughter. While "detriment is at best a nebulous standard that depends on the context of the inquiry," "'[i]t cannot mean merely that the parent in question is less than ideal [and] did not benefit from the reunification services as much as we might have hoped.'" (*In re C.C.*, *supra*, 172 Cal.App.4th at p. 1490.) True, the court found that even after services Father was far from being a perfect parent, but "the risk of detriment must be *substantial*, such that" the "child's physical or emotional well-being" are in danger. (*Ibid.*, italics added.) The court failed to show how limited experimental monitored therapeutic visits would place Daughter at substantial risk of detriment absent explicating existing extraordinary circumstances.

The goals of the Welfare and Institutions Code statutory scheme support this result. The code encourages visitation to be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A) [mandating visitation as frequently as possible when a court orders reunifications services].) This is because "[i]nteraction between natural parent and child will always confer some incidental benefit to the child." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) We agree that, generally speaking, it is beneficial to children to maintain some type of relationship with their natural parents when doing so would not be detrimental to them. While the court may have shown that Father's *custody* of Daughter would be detrimental to her, again, it did not sufficiently explain why attempting to preserve some relationship between Father and Daughter in a therapeutic setting for at least an experimental length of time would be detrimental to Daughter. (*In re Luke L.*, *supra*, 44 Cal.App.4th at p. 679 ["Absent a showing of detriment caused by visitation, ordinarily it is improper to suspend or halt visits even after the end of the reunification period"].)

6

Courts strive to keep families together when possible, and sua sponte terminating limited monitored therapeutic visits when the visits' efficacy has not been proved, let alone tested, and in the absence of articulated extraordinary circumstances, is an abuse of discretion because there is insufficient evidence such visits would be detrimental. (§ 202, subd. (a) [a goal of the dependency system is to "strengthen the minor's family ties whenever possible"]; accord, *In re Joseph B.* (1996) 42 Cal.App.4th 890, 900 [reiterating a goal of the system is "to preserve the minor's family ties"].) This ruling, however, does not prohibit the court from reevaluating visitation, based in part on Daughter's input, after the monitored therapeutic visitation occurs.

## DISPOSITION

The juvenile court's order terminating Father's visitation is reversed.

NOT TO BE PUBLISHED.


                                        LUI, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.


7