Filed 4/26/16  In re N.M. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re N.M., a Person Coming Under the Juvenile Court Law. | B263294 (Los Angeles County Super. Ct. No. CK47476) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JEREMIAH W.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Tony L. Richardson, Judge.  Affirmed.

Judy Weissberg-Ortiz, under appointment for the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Jeremiah W. (Father) appeals from the juvenile court's jurisdictional findings and dispositional orders regarding his daughter, N.M. (Baby), now almost two years old. Father argues the court's findings and orders are not supported by sufficient evidence and he could be prejudiced by them in future proceedings. We disagree.

**BACKGROUND**

In April 2014, Baby came to the attention of the Department of Children and Family Services (DCFS) the day after she was born because her mother, Angela M. (Mother), tested positive for methamphetamine, amphetamines, and marijuana when admitted to the hospital.[1] The hospital placed Baby in the neonatal intensive care unit because she had a cleft lip and palate, which interfered with her ability to feed; suffered from meconium aspiration (fecal matter inhaled into the lungs), hypoxia (deficiency in oxygenation), and cardiomyopathy (heart weakness); possibly had a genetic chromosomal abnormality affecting fine motor movements of one hand; tested positive for amphetamines and marijuana; and was suffering from withdrawal symptoms.

On May 5, 2014, DCFS filed a dependency petition under Welfare and Institutions Code section 300, subdivisions (a), serious physical harm, and (b), failure to protect.[2] Under subdivision (a), DCFS alleged Mother and Father's history of engaging in violent altercations and Father's violence toward Mother endangered Baby's physical health and safety and placed her at risk of harm. Under subdivision (b), DCFS made five allegations, only two of which concerned Father. First, DCFS reiterated the domestic violence allegation made under subdivision (a) and, second, alleged Father had a history of illicit drug use which rendered him incapable of providing regular care for Baby, physically endangered her, and placed her at risk of future damage. The court detained Baby on May 5, 2014.

At the jurisdictional hearing, Mother's counsel requested dismissal of the domestic violence counts, arguing Mother's statements about Father's violence were "not, in fact,

---

[1] Mother is not a party to this appeal.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

what happened." Father's counsel joined, and also requested dismissal of the substance abuse count arguing that Mother's statement she thought she once saw Father abuse drugs did not establish a history of abuse and Father's criminal record reflected no drug-related offenses. The court sustained the petition on all counts.

At the disposition hearing on February 4, 2015, Father was not present but was represented by counsel. The court granted Mother and Father reunification services, at the request of Mother's, Father's, and Baby's counsel and over the objection of DCFS. As to Father's reunification services, the court ordered monitored visits "only as can be reasonably . . . arranged" because Father is currently serving a six-year sentence in Wasco state prison, located north of Bakersfield. The court then asked whether any of the parties wished to be heard; none responded affirmatively. Father appealed.

## DISCUSSION

On appeal, Father argues there was insufficient evidence to support the jurisdictional findings as to him and the unsupported findings, and attendant dispositional orders, may prejudice him in future proceedings and violated his due process rights. We disagree.

We review jurisdictional findings and dispositional orders for substantial evidence. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58.) A finding or order "will be upheld if it is supported by substantial evidence" that is "reasonable in nature, credible, and of solid value," "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228); in this review, "'"[a]ll evidence favorable to respondent is assumed true and the unfavorable is discarded.'"'" (*In re Lynna B.* (1979) 92 Cal.App.3d 682, 695.) We also "resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) We do not make credibility determinations, reweigh evidence, or substitute our judgment for the court's. (*In re Mark L.* (2001) 94 Cal.App.4th 573, 581; *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095–1096.)

3

On appeal, Father "has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) If a parent can show the jurisdictional grounds were not supported by substantial evidence, the dispositional orders based on those grounds are reversed.

DCFS argues we need not review the findings as to Father because substantial evidence supported the findings as to Mother, and "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re D.P.* (2015) 237 Cal.App.4th 911, 916.) Father is not arguing jurisdiction was improper, however. He is arguing the sustained findings as to *him* were improper and may prejudice him in future proceedings. We therefore review the findings as to Father.

DCFS and Father also disagree as to whether past conduct alone supports jurisdiction. DCFS argues it can, although it acknowledged conflicting authority. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1439–1440; cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023 [disagreeing with *In re J.K.* "to the extent it concludes that section 300, subdivision (b), authorizes dependency jurisdiction based upon a single incident resulting in physical harm absent current risk"].) Father argued it cannot. (See, e.g., *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1395–1398, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; see also *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1318–1319.) Courts supporting Father's view have concluded that although evidence of a parent's "past conduct may be probative of current conditions," "'[t]here must be some reason to believe the acts may continue in the future.'" (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.) We need not decide which view is correct, however, because even under Father's more demanding view the court properly sustained the findings as to him.

4

## A. Substantial evidence supports the domestic violence findings

Father admitted he has "gotten physical" with Mother. During arguments he has grabbed her to "'shake her up to snap her out of it.'" Father said he argued with Mother because she was a compulsive liar and "he couldn't deal with it." Mother also admitted to physical altercations with Father. When Mother was first interviewed, she told a social worker she was scared of Father because he "is violent and [was] violent with her once or twice." Specifically, she alleged Father hit her on her face and body with his open hand and pushed her. She denied being injured. When the social worker asked whether she needed domestic violence counseling, Mother said she did not, but also thought that "it wouldn't hurt."

When Mother was interviewed again a month later, she recanted most of her allegations. She said when she was first interviewed she was "'heavily sedated'" from giving birth and upset and could not remember everything she said. She clarified that Father had never struck her and law enforcement had never been called to break up their altercations. Mother stated the contents of the detention report written after her initial interview were untrue except that she and Father had pushed each other during "'heated conversations.'" Although neither Father nor Mother specified when these altercations occurred, Mother stated their "'heated fights [happened] towards the end'" of the relationship.

The court reasonably concluded Mother and Father engaged in violent altercations while Mother was pregnant. Mother accused Father of being violent and scaring her; Mother and Father both admitted to pushing each other during contentious arguments; Mother said the arguments occurred toward the end of their relationship; Mother and Father never specified when exactly their relationship ended; and Father admitted, at least, to being in contact with Mother while she was pregnant, even if it was only for a short period of time. The court also reasonably concluded there would be opportunities for the violence to occur in the future. Mother and Father described their relationship as "on and off"; Mother said Father was "'one of the loves of [her] life'"; both Mother and Father could continue to be involved in the other's life because of Baby, especially if

Father gains custody as he wants; Father believes gaining custody is possible because he believes he could be released early from custody after serving two and a half of his six sentenced years. But Father did not present evidence he and Mother had resolved the issues that led to their arguments, including that he thought Mother was a compulsive liar, or that he had taken steps to reduce his anger or violent impulses and was committed to not repeating them. Construing all the facts and implications in favor of the judgment, as we must (*In re David M.*, *supra*, 134 Cal.App.4th at p. 828), Mother and Father's violent altercations during Mother's pregnancy, the possibility of Mother and Father continuing to interact in potentially contentious situations, and the lack of evidence of changed circumstances were sufficient evidence to sustain the domestic violence findings as to Father.

B. **Substantial evidence supports the substance abuse finding**

Father admitted to substance abuse. He admitted to smoking methamphetamine for a month or two during his relationship with Mother; he also has a history of smoking medical marijuana for a work-related injury. Mother reported she saw Father abuse illegal drugs at least once while she was pregnant. As with the domestic violence allegations, however, she disagreed with DCFS's characterization of Father as a drug abuser incapable of caring for his daughter. In addition, Father was arrested in September 2013 during Mother's pregnancy for a violation of Health and Safety Code section 11379, subdivision (a), which prohibits the transportation, sale, or distribution of a controlled substance.

The court reasonably concluded that Father is a substance abuser. Father admitted he used methamphetamine for two months; Mother said he used illegal drugs during her pregnancy; and his most recent arrest was for a drug-related offense. The court also reasonably concluded that this recent substance abuse created a risk of harm because when a child is of "'tender years,'" "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 767); not only is Baby of tender years, she is also physically disabled and will require extensive

6

medical care, including surgery and therapy to correct her cleft lip and palate. Father's argument that his substance abuse occurred prior to Baby's birth is unpersuasive. His past history of substance abuse is "probative of current conditions" because the recentness of his drug abuse and drug-related incarceration during Mother's pregnancy suggest his acts could continue in the future. (*In re Nicholas B.*, *supra*, 88 Cal.App.4th at p. 1134.)

Father did not argue the disposition orders were incorrect other than that they were based on improper findings. Because the findings were supported by sufficient evidence, we affirm.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

7