Filed 5/19/16 In re Jade J. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JADE J., a Person Coming Under the Juvenile Court Law. | B267188 (Los Angeles County Super. Ct. No. CK71349) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Y.B., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Debra L. Losnick, Commissioner. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Y.B. (Mother) appeals from dispositional orders the juvenile court issued after finding she had beaten her daughter, Jade J. (Daughter), now age 6. She argues the court erred because there was insufficient evidence to support the jurisdictional findings and the attendant dispositional orders were unnecessary and potentially prejudicial. We disagree and affirm.

## BACKGROUND

In 2011, the Department of Children and Family Services (DCFS) filed a dependency petition on behalf of Daughter and one of her half brothers (Son), alleging abuse by Mother. Later that year, the court terminated the case with a family law order, awarding Daughter's father, David J. (Father), and Mother joint custody.[1] According to a DCFS report, immediately after the final court date, Father absconded with Daughter and concealed her from Mother. Mother claims she tried to force Father to comply with the order, but the family court would not assign her a hearing date because she had no address to serve Father. She told DCFS that she filed kidnapping reports with the police and Find The Children (an organization dedicated to helping families locate missing children), but both failed because she had no address for Father. Mother had no contact with Daughter for four years.[2]

In January 2015, Father's girlfriend filed a domestic violence report, alleging Father had violently beaten her while Daughter and one of Daughter's half sisters were in the residence. During DCFS's subsequent investigation into the children's well-being, DCFS learned that although Daughter called Father's girlfriend "mommy," Mother was Daughter's biological mother. Although Father told DCFS Mother's whereabouts were unknown, DCFS quickly found Mother, who had been living at the same residence for

---

[1] Father is not a party to this appeal.

[2] Mother told DCFS that in 2013 she saw Father with Daughter outside a courthouse on Compton Boulevard and approached Father. According to her, an altercation ensued, culminating with Father hitting her and threatening her with a gun. Mother says Father fled, and by the time she flagged down law enforcement, Father was gone and could not be located because she had no address for him. Apart from that one encounter, Mother said she had not seen Daughter until 2015.

the past four years. On February 23, 2015, DCFS filed a petition under Welfare and Institutions Code section 300 on behalf of Daughter, alleging abuse and neglect against Father.[3] At the detention hearing that same day, the court detained Daughter from Father and released her to Mother.

On June 11, 2015, a courtroom sheriff's deputy called DCFS, reporting that while Daughter was in the courthouse for a hearing, Daughter had revealed to him and Daughter's counsel that she was afraid to go home with Mother because Mother was spanking her. Daughter, however, was allowed to go home with Mother after the deputy and Daughter's counsel determined Daughter had no signs of abuse on her body. During DCFS's resulting follow-up visit the next day, Daughter stated Mother had "whooped" her and Son because they were fighting while cleaning their room. Daughter described the "whooping" as Mother hitting her one time on the bottom with her hand. Mother relayed to DCFS the same account as Daughter, and Daughter said she was not afraid of Mother. About a month later, a medical professional examined Daughter and Son to forensically investigate the physical abuse allegations. Both Daughter and Son reported during the examination that Mother "whooped" them with a belt to discipline them.

On July 27, 2015, DCFS filed a second amended petition, adding allegations against Mother. DCFS alleged Mother had harmed Daughter because Mother and Father had a history of engaging in domestic violence; Mother struck Daughter with belts and her hands and pushed Daughter; Mother's home was hazardous and unsanitary; Mother allowed an unrelated adult male with a history of domestic violence to frequent her home and have unlimited access to Daughter; Mother abused illicit drugs; and Mother emotionally abused Daughter by destroying personal items Father gave her and was not emotionally bonding with or nurturing Daughter. On August 5, 2015, when DCFS read the allegations to Daughter, she denied Mother hit her or Son with belts or her hands.

At the adjudication hearing on August 15, 2015, Father waived his rights and submitted to the petition, and the court sustained the petition on several of the grounds

---

[3] Undesignated statutory references are the Welfare and Institutions Code.

relating to him. Mother contested the allegations against her. As to the physical abuse allegations, Mother argued Father had been overheard coaching Daughter just before her medical examination, during which she revealed Mother's alleged abuse, and when the social worker later interviewed Daughter, she denied the abuse. In response, DCFS acknowledged that Daughter appeared to be influenced by her surroundings when making statements, but argued that fact actually bolstered its claims of abuse because Daughter stated Mother hit her with a belt outside of Mother's presence and later recanted only when interviewed in Mother's residence when Mother was home. The court sustained the petition as to Mother, under subdivisions (a) and (b), amending the physical abuse language to read "inappropriately disciplined." The court ordered Daughter to remain with Mother and granted Mother family maintenance services and Father enhancement services. Mother appealed.

## DISCUSSION

On appeal, Mother argues there was insufficient evidence to support the jurisdictional findings as to her and the attendant dispositional orders asserting continued jurisdiction over Daughter were unnecessary and potentially prejudicial.

We review jurisdictional findings and dispositional orders for substantial evidence. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58.) A finding or order "will be upheld if it is supported by substantial evidence" that is "reasonable in nature, credible, and of solid value," "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228); in this review, " ' " '[a]ll evidence favorable to respondent is assumed true and the unfavorable is discarded.' " ' " (*In re Lynna B.* (1979) 92 Cal.App.3d 682, 695.) We also "resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828.) We do not make credibility determinations, reweigh evidence, or substitute our judgment for the court's. (*In re Mark L.* (2001) 94 Cal.App.4th 573, 581; *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095–1096.)

4

On appeal, Mother "has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) If a parent can show the jurisdictional grounds were not supported by substantial evidence, the dispositional orders based on those grounds are reversed.

DCFS argues we need not review the findings as to Mother because substantial evidence supported the findings as to Father, and " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re D.P.* (2015) 237 Cal.App.4th 911, 916.) Mother is not arguing jurisdiction was improper, however. She is arguing the sustained findings as to *her* were improper and resulted in improper dispositional orders, which may prejudice her in future proceedings. We therefore review the findings as to Mother. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

## A. Substantial evidence supports the physical abuse allegation

As to the subdivision (a) findings, Mother argues that under subdivision (a), " 'serious physical harm' " does not include " '[r]easonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury,' " and the court did not have substantial evidence that Mother did anything more than spank Daughter without leaving injuries. (§ 300, subd. (a).) Although Mother is correct the statute excepts non-injurious spanking, she is incorrect that insufficient evidence supported the abuse allegation. When outside of Mother's presence, Daughter accused Mother of hitting her with a belt and her hands and once confided to law enforcement that she was scared to return home to Mother because Mother "whooped" her. Son also accused Mother of "whooping" him with a belt, and Mother admitted to hitting Daughter on the bottom with her hand. Under subdivision (a), "the manner in which a less serious injury

5

was inflicted" or "a history of repeated inflictions of injuries on the child or the child's siblings" can sustain jurisdiction. (§ 300, subd. (a).) Daughter's accusations that Mother hit her more than once in the past and with a belt, her revelation that she feared Mother, and Son's accusation Mother also hit him with a belt, collectively, indicate that Daughter either did suffer or was at substantial risk of suffering serious physical injury.

Daughter's and Son's statements alone are substantial evidence to sustain the jurisdictional finding because the " ' "testimony of a single witness is sufficient to uphold a judgment." ' " (*In re Lana S.* (2012) 207 Cal.App.4th 94, 104.) We disregard Mother's allegedly conflicting evidence under the substantial evidence standard (*In re Lynna B.*, *supra*, 92 Cal.App.3d at p. 695), for example, her accusation Father coached Daughter to fabricate the abuse allegations, the lack of physical marks on Daughter to corroborate her statements, Daughter's recantation, and her lawyer's, her doctor's, and law enforcement's willingness to allow her to return home after she accused Mother of abuse.

As to the subdivision (b) findings, Mother argues that although past conduct may be probative of future conditions, " ' "[t]here must be some reason to believe the acts may continue in the future" ' " to sustain jurisdiction. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.) Our appellate courts are split, however, as whether past conduct alone creates jurisdiction. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1439–1440 [sustaining jurisdiction on past conduct alone]; cf. *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023 [disagreeing with *In re J.K.* "to the extent it concludes that section 300, subdivision (b), authorizes dependency jurisdiction based upon a single incident resulting in physical harm absent current risk"].) We need not decide which view is correct because even under the more demanding view, the court properly sustained the subdivision (b) findings. Construing all the facts and implications in favor of the judgment, as we must (*In re David M.*, *supra*, 134 Cal.App.4th at p. 828), sufficient evidence supported that Mother's acts may continue in the future because Mother gave no indication that the inciting conditions or her tendencies to strike her children had abated, she had participated in counseling or programs aimed to address her abusive

6

behavior, or that she had committed to appropriate discipline, and Daughter has not reported a lessening fear of Mother.

## B.    Continuing jurisdiction is appropriate

Mother argues the court should have terminated jurisdiction with a family law order, conditioning Father's visitation on certain restrictions.

DCFS acknowledges, and Mother does not dispute, that our appellate courts disagree as to the standard of review for orders terminating jurisdiction after placement with a noncustodial parent. Some courts apply abuse of discretion (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1082), while others apply substantial evidence (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1133–1134). "The practical differences between the two standards of review are not significant. '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' . . ." ' " (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) We need not decide which standard of review is correct as the dispositional orders were proper under either standard.

Mother argues continuing jurisdiction is unnecessary to provide for Daughter's welfare and interferes with her constitutional parental rights to the extent that it places conditions on her ability to parent in the future. "While placement of the child with the formerly noncustodial parent may not be detrimental, there may be some concern[s]" which warrant continued jurisdiction, for example, "this parent will turn around and relinquish the child to the other parent after the termination order; or this new custodial parent may need services. Also, the formerly noncustodial parent may not want long-term custody. Alternatively, the court may anticipate that with the appropriate reunification services, the child will be able to return to the home of the original custodial parent. It is also possible that . . . the court may see a need to provide services short of reunification for the child's best interests. Thus, supervision may be appropriate in lieu of or before terminating jurisdiction." (*In re Sarah M.* (1991) 233 Cal.App.3d 1486,

7

1496–1497.) Here, the court sustained the abuse allegations against Mother; Mother has an extensive history with DCFS, including sustained allegations of abuse; Daughter was young when she was separated from Mother; Mother had no contact with Daughter for four years while Daughter lived exclusively with Father; Daughter called Father's girlfriend "mommy" during that period; Daughter has lived with Mother for only one year since her return to Mother; Father is enrolled in counseling and services which may make partial custody for him possible; Daughter's permanent placement and Mother's and Father's needs for services and counseling may change. These factors are substantial evidence supporting that the court's exercise of discretion in continuing jurisdiction was proper.

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

8